**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **19-00916-jw**
Adversary Proceeding Number: **19-80039-jw**

### ORDER

The relief set forth on the following pages, for a total of 11 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**01/15/2020**



*/s/ John E. Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 01/15/2020

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Cameron Julius Xavier Banks,<br><br><br>Debtor(s). | C/A No. 19-00916-JW<br><br>Adv. Pro. No. 19-80039-JW<br><br>Chapter 13<br><br>**ORDER** |
| Cameron Julius Xavier Banks,<br><br>Plaintiff(s),<br><br>v.<br><br>Gralin Hampton Auto Sales,<br><br>Defendant(s). | |

This matter is before the Court for a determination of damages regarding the Complaint filed by Cameron Julius Xavier Banks ("Plaintiff or Debtor") against Gralin Hampton Auto Sales ("Defendant"). In his Complaint, Plaintiff seeks damages for willful violation of the automatic stay under 11 U.S.C. § 362(k)(1) due to the post petition repossession of three vehicles by Defendant. The Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157.[1]

---

[1] A proceeding brought under 11 U.S.C. § 362(k)(1) is a core proceeding because it "derive[s] directly from the Bankruptcy Code and can be brought only in the context of a bankruptcy case." *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009) (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 109 (2d Cir. 2006)). The Court continues to have jurisdiction over this matter despite the dismissal of the underlying bankruptcy case on July 12, 2019. *See id.* ("The great weight of case authority supports [the] conclusion that a § 362(k)(1) proceeding remains viable after termination of the underlying bankruptcy case.") (citing cases).

Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following findings of fact and conclusions of law:[2]

## FINDINGS OF FACT

1.  Plaintiff is the owner and operator of an executive shuttle service business, which provides transportation services using high-end luxury vehicles, including a 2015 Mercedes-Benz and 2018 Chevrolet Camaro ("Vehicles").

2.  Plaintiff filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on February 15, 2019, Case Number 19-00916. Debtor listed the Vehicles as property of the estate in his Schedules. Debtor also listed a third vehicle in his Schedules, a 2017 Chrysler Pacifica, but this vehicle is titled solely in the name of CJ Banks Transportation LLC.

3.  Plaintiff listed Defendant as a creditor on Schedule D and included Defendant on the mailing matrix in his bankruptcy case. On February 15, 2019, the Clerk of Court served the Notice of Chapter 13 Bankruptcy Filing on Defendant at the following address:

    > Gralin Hampton Auto Sales
    > 1737 N. Main Street
    > Summerville, SC 29483

4.  On February 15, 2019, Debtor sent a letter to Defendant by facsimile informing of Debtor's bankruptcy filing and the automatic stay.

5.  On February 25, 2019, Debtor sent a second letter to Defendant by facsimile and U.S. Mail, enclosing a copy of the Notice of Chapter 13 Bankruptcy Filing and Chapter 13 Plan. In his chapter 13 plan, filed on February 25, 2019, Debtor proposed to use income from his executive shuttle service business, as well as income from a separate trucking business, to fund his plan payments. The plan required payments of $4,220.00 per month to

---

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

2

the Trustee beginning thirty days after the petition was filed pursuant to 11 U.S.C. § 1326(a)(1).

6. On March 1, 2019, Defendant filed proofs of claim in Debtor's bankruptcy case asserting claims secured by the Vehicles and the Pacifica, listing the 1737 N. Main Street, Summerville, SC 29483 address as its address for notices.

7. Debtor was incarcerated on May 23, 2019 on federal charges and has remained incarcerated from that date forward but attended the continued hearing on damages while in the custody of the U.S. Marshal.

8. On or about June 18, 2019, Defendant repossessed the Vehicles from Debtor's former residence.

9. On June 18, 2019, Debtor, through counsel, sent a demand letter to Defendant seeking immediate return of the Vehicles. Debtor's counsel also made demands for return of the Vehicles via telephone. The Vehicles were not returned despite multiple demands.[3]

10. On June 20, 2019, Plaintiff commenced this adversary proceeding by filing a Complaint seeking turnover of the Vehicles pursuant to 11 U.S.C. § 542 and seeking damages for willful violation of the automatic stay pursuant to 11 U.S.C. § 362(k)(1).

11. On July 12, 2019, Debtor's bankruptcy case was dismissed because the plan did not comply with the requirements of chapter 13 of the Bankruptcy Code.[4]

---

[3] Defendant asserts that it was unable to return possession of the Vehicles to Debtor due to his incarceration and because he no longer resided at the leased property from which the Vehicles were repossessed.

[4] The Trustee requested dismissal because Debtor was more than $12,000 in arrears on his plan payments and because Debtor failed to comply with the C-II order on May 9, 2019, which denied confirmation but allowed Debtor 10 days to file a confirmable plan.

3

12. Defendant failed to timely respond to the Complaint and after a further hearing on August 22, 2019 to consider the default, at which Defendant did not appear, the Clerk of Court entered default against Defendant on September 13, 2019.

13. On September 17, 2019, based upon Defendant's default, the Court entered an Order ("Default Judgment Order") requiring Defendant to turn over the Vehicles and finding that there has been a violation of the automatic stay of 11 U.S.C. § 362 and that Debtor is entitled to damages, actual and punitive. A damages hearing was set for October 17, 2019 by separate notice.

14. Defendant filed a Motion to Reconsider on September 19, 2019.

15. On October 17, 2019, the Court held a hearing on damages and the Motion to Reconsider. Debtor did not attend that hearing but was represented by his wife and counsel. Prior to presenting argument regarding the Motion to Reconsider or evidence of damages, counsel for the parties negotiated a settlement whereby Defendant agreed to pay $8,000 in exchange for Debtor agreeing to release all claims against Defendant and allow Defendant to retain the Vehicles. While Debtor's wife attended the hearing on behalf of Debtor, the proposed settlement was conditioned upon approval by Debtor, who did not attend the hearing because he was still incarcerated. After the hearing, Debtor's counsel notified the Court that Debtor refused to agree to the settlement, and a further hearing was scheduled.

16. On December 12, 2019, the Court conducted a hearing on the Motion to Reconsider and received evidence of damages from Debtor. At the hearing, Defendant withdrew its Motion to Reconsider, leaving only the issue of damages for consideration. Debtor presented testimony[5] regarding his monthly income from the executive shuttle service

---

[5] Debtor was transported to the hearing by the U.S. Marshals from the Charleston County Detention Center pursuant to an Order for Transport entered on November 26, 2019.

4

business to support his claim that the wrongful repossession of the Vehicles caused damages in the form of lost profits from his business, which resulted in his inability to make payments on other properties, resulting in foreclosure and his inability to make plan payments. In essence, Debtor attributed his "loss of everything" to the repossession of the Vehicles. As proof of his damages, Debtor presented into evidence an income statement for the executive shuttle service business for 2018 and 2019 and an invoice from Debtor's counsel showing $7,548.80 in attorney's fees and $358.90 in expenses fees incurred up through the October 17, 2019 hearing in connection with this adversary proceeding. The income statement, which was handwritten and difficult to read, showed expense amounts for the Vehicles for "fuel" and "payment," but did not reflect other costs normally associated with a business, such as taxes, supplies, equipment, insurance, parking, vehicle maintenance, and salaries. Despite cross examination, Debtor was unable or unwilling to testify regarding any other monthly expenses related to the executive shuttle service. He testified that his wife was able to run the business despite his absence due to his incarceration but did not present her testimony in support of this claim. He also testified that the repossession of the Vehicles caused his bankruptcy case to fail because he was unable to make his plan payments.

17.    On December 17, 2019, the Court entered an order vacating the portion of the Default Judgment Order requiring Defendant to turnover the Vehicles based on its determination that such relief should be vacated due to the dismissal of the bankruptcy case prior to the entry of the Order under 11 U.S.C. § 349(b)(2) (requiring that, upon dismissal of a bankruptcy case, all turnover orders entered pursuant to 11 U.S.C. § 542 be vacated).

18.    After the hearing, with leave of the Court, Debtor's counsel filed a supplemental fee invoice on December 23, 2019 to include attorney's fees incurred between

5

the October 17, 2019 hearing and the December 12, 2019 hearing in connection with this adversary proceeding. The invoice indicates that the total amount owed as of December 23, 2019 is $13,271.70.

## CONCLUSIONS OF LAW

By prior order entered on September 17, 2019 as a result of Defendant's default, the Court determined that there has been a violation of the automatic stay of 11 U.S.C. § 362 and that Debtor would be entitled to damages, actual and punitive, in an amount to be determined. In light of Defendant's withdrawal of its Motion to Reconsider, the issue of whether a willful violation of the automatic stay under 11 U.S.C. § 362(k)(1) occurred is undisputed and the only issue for determination by the Court is the amount and type of damages to be recovered by Debtor. Section 362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Debtor bears the burden of proof on the issue of damages. *In re Warren,* 532 B.R. 655, 660 (Bankr. D.S.C. 2015) (citing *Bolen v. Mercedes Benz Inc. (In re Bolen),* 295 B.R. 803, 807 (Bankr. D.S.C. 2002)).

*a. Actual Damages - Loss of use*

Debtor testified that he suffered actual damages through the loss of use of the Vehicles and the Pacifica in his executive shuttle service business. During the hearing, the Court determined that because the Pacifica was titled solely in the name of CJ Banks Transportation, LLC, it was not property of the estate and therefore not subject to the automatic stay. *See Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007) (finding that the automatic stay did not apply to an LLC wholly owned by the debtors, because an LLC is a separate legal entity

6

for purposes of liability and property ownership and therefore the LLC must separately file bankruptcy in order to receive the protections afforded by § 362(a)(1)); *In re Brittain,* 435 B.R. 318 (Bankr. D.S.C. 2010) (stating that "members of an LLC have no property interest in property owned by the LLC" and therefore "a member's bankruptcy estate has no interest in property of an LLC."). Accordingly, Debtor presented testimony regarding the historical monthly income he received solely from the use of the Vehicles in his executive shuttle service business from January 2019, when the Vehicles were first put into use, through May 2019.[6]

Debtor testified that the gross income from the Vehicles was $2550 in January 2019, $5075 in February 2019, $5900 in March 2019, $5885 in April 2019, and $5100 in May 2019. Although Debtor testified that there were no expenses for the Vehicles due to the bankruptcy reorganization, the income statement appears to reflect some expenses, including fuel costs ranging between $118 - $192 per month, but he failed to acknowledge the monthly debt service, repairs, or other monthly operating expenses. Debtor appears to argue that his actual damages should be the lost income for the period of time when the Vehicles were in the possession of Defendant from June 18, 2019 through the dismissal of his bankruptcy case on July 12, 2019 and other consequential damages.

Debtor's testimony regarding his actual damages from loss of use of the Vehicles was unclear and unconvincing. The income statement appeared incomplete regarding the operating expenses normally associated with running an executive shuttle service business, such as salaries, taxes, insurance, parking, and routine maintenance costs.[7] Debtor also failed

---

[6] Debtor's bankruptcy case was filed on February 15, 2019. He was incarcerated on May 23, 2019, and his case was dismissed on July 12, 2019 for, among other things, failure to make payments to the Trustee for approximately three months.

[7] The Court further observes that to the extent the business operates as an LLC (which is indicated by the Vehicles' insurance documents attached as an exhibit to the Complaint as well as Debtor's Schedules), it would have business expenses that would be paid ahead of any distribution to Debtor as a member of the LLC.

7

to adequately demonstrate to the Court that his business could continue to operate and generate income during the repossession period despite his incarceration, thus failing to prove that the stay violation was the actual or proximate cause of any lost income from loss of use. *See In re Bishop,* 296 B.R. 890 (Bankr. S.D.Ga. 2003) (stating that "the causal link between the willful conduct in violation of the stay and the harm must be clearly established or readily apparent"); *In re Jones,* No. 12-30654, 2012 WL 5993760 (Bankr. E.D.Va. Nov. 30, 2012) (refusing to award damages where debtor failed to prove that stay violation was proximate cause of debtor's loss of college tuition). "An award of damages under section 362(k) must be founded on 'concrete, non-speculative evidence' and cannot be based merely on 'speculation, guess or conjecture.'" *In re Bolin,* C/A No. 12-02442-DD, 2012 WL 4062807, slip op. at *2 (Bankr. D.S.C. Sept. 13, 2012) (quoting *Rawles v. Wych (In re Rawles)*, Adv. No. 08-00555, 2009 WL 2924005, at *2 (Bankr. D.Md. Jun. 18, 2009)); *see also In re Seaton,* 462 B.R. 582, 592 (Bankr. E.D. Va. 2011). Debtor's argument that the lost income from the repossession caused the dismissal of his bankruptcy case is also not persuasive. At the time of dismissal, Debtor was over $12,000 in arrears on his plan payments (which were $4,220 per month according to his most recent proposed plan), the arrearage included payments due for months prior to the Vehicles' repossession, and the repossession occurred less than one month prior to the dismissal of the case. Thus, it appears Debtor was failing to make his plan payments even prior to the repossession of the Vehicles. While Debtor testified that the business was capable of being operated by his wife, she did not appear as a witness to corroborate his testimony (although she did appear at the first hearing to negotiate the settlement). Based on the testimony and evidence presented, the Court finds that Debtor failed to meet his burden of proof of demonstrating actual damages in the form of lost income as a result of Defendant's

8

violation of the automatic stay by concrete, non-speculative or convincing evidence. He also failed to prove that the alleged consequential damages resulted from the repossession.

### b. *Emotional Distress Damages*

Debtor also asserted a claim for damages for emotional distress in the Complaint, alleging that Debtor experienced anxiety and fear as a result of losing the Vehicles and the loss of personal possessions in the Vehicles. Debtor offered no testimony regarding any emotional distress he experienced as a result of the repossession. Accordingly, the Court finds that Debtor failed to meet his burden of proving emotional distress damages.

### c. *Attorney's Fees*

In support of his claim for attorney's fees, Debtor presented into evidence a copy of an invoice from his counsel, which provides that Debtor incurred $7,548.80 in attorney's fees and $358.90 in expenses up through the October 17, 2019 hearing. This invoice was supplemented after the hearing to reflect an additional $5,364.00 in attorney's fees incurred after the October 17, 2019 hearing. In total, Debtor now seeks $13,271.70 in attorney's fees and costs in connection with this adversary proceeding. Considering all the factors to determine a reasonable attorney's fee award, the Court finds that an attorney's fee award of $12,000 is reasonable under the circumstances of this case.[8] *See Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243 (4th Cir. 2009) (setting forth the twelve factors to determine reasonableness of attorney's fee award). While the amount awarded exceeds attorney's fee awards in prior cases with similar facts,[9] the Court recognizes that in this case there was a

---

[8] Some of the attorney's fees requested, while owed by Debtor, cannot be attributable to Defendant as damages resulting from its actions. For example, fees incurred in connection with obtaining a transport order to get Debtor out of jail to attend the damages hearing and other fees related to his incarceration.

[9] *See e.g., In re Warren*, 532 B.R. at 665 (awarding $8,200 in fees, plus costs of $350); *In re Smith*, C/A No. 05–05537–JW, slip op. (Bankr. D.S.C. Dec. 19, 2005) (awarding $2,186.00 in attorney's fees); *Young v. Elite Fin. Servs. (In re Young)*, C/A No. 04–10260, Adv. Pro. No. 04–80353, slip op. (Bankr.D.S.C. Sept. 15, 2005) (awarding $9,027.00 in attorney's fees in a matter that was "vigorously litigated" by a sophisticated

9

need for counsel to prepare for and attend a second damages hearing because the parties were unable to agree to a settlement, and therefore the request for additional fees is appropriate.

### d. *Punitive Damages*

Debtor further seeks an award of punitive damages. Section 362(k) allows the Court to award punitive damages in appropriate circumstances, such as where the creditor's conduct was intentional or egregious and where the creditor delayed returning the property to the debtor. Defendant repossessed Debtor's Vehicles after filing its proofs of claim in Debtor's bankruptcy case, therefore it is incontrovertible that Defendant had knowledge of Debtor's pending bankruptcy case and intentionally engaged in an act to obtain possession of property of the estate. Defendant also retained possession of the Vehicles for several weeks in violation of the automatic stay despite demands for return of the Vehicles from Debtor's counsel and the filing of this adversary proceeding. Defendant does not dispute that it had notice of the bankruptcy case and the automatic stay. Under the circumstances of this case, the Court finds that a punitive damages award of $1,500 is appropriate to deter similar future violations.[10]

## CONCLUSION

Based upon the foregoing, Defendant is hereby ORDERED to pay $12,000 by check made payable to and delivered directly to Steadman Law Firm, P.A. as attorney's fees and $1,500 to Debtor c/o Steadman Law Firm, P.A. as punitive damages within fourteen days of the entry of this Order. No other damages are appropriate or proven. Defendant shall file proof of this payment with the Court no later than fourteen days after the entry of this Order.

**AND IT IS SO ORDERED.**

---

creditor); *In re Miller*, C/A No. 04–15104–W, Adv. Pro. No. 05–80032–W, slip op. (awarding $2,350.00 in attorney's fees).

[10] In determining the punitive damages award, the Court takes into account the significant amount of attorney's fees awarded in this case.